1   WO

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8   MERCHANTS BONDING COMPANY          No. CV-12-00501-PHX-JAT
9   (MUTUAL), an Iowa corporation,
                                        **ORDER**
10                      Plaintiffs,

11
    v.
12
13  U.S. PREFAB, INC., an Arizona
    corporation; and HARRY O. WOODY, an
14  unmarried man,

15                      Defendants.
16
17          Pending before the Court is Plaintiff Merchant Bonding Company (Mutual)'s

18  Motion for Partial Summary Judgment. (Doc. 32). Defendants U.S. Prefab, Inc. and

19  Harry O. Woody filed a Response (Doc. 35) and Plaintiff filed a Reply (Doc. 38). The

20  Court now rules on the motion.

21  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

22          For purposes of the Court's resolution of the pending summary judgment motion,

23  the Court considers the relevant facts and background to be as follows.[1]

24          Sometime in 2005, Defendant U.S. Prefab, Inc., an Arizona general contractor,

25  and its President, Defendant Harry O. Woody ("Woody") approached Plaintiff Merchants

26  Bonding Company (Mutual) seeking a construction bond.  (*See* Plaintiff Merchants

27  ─────────────────────

28          [1] For purposes of Plaintiff's motion for partial summary judgment, the Court
    construes all disputed facts in the light most favorable to Defendants.  *Ellison v.
    Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Bonding Company (Mutual)'s Separate Statement of Facts in Support of Motion for Partial Summary Judgment ("PSOF"), Doc. 33 ¶¶ 1–2; Defendants' Separate Statement of Facts in Support of Opposition to Motion for Partial Summary Judgment ("CSOF"), Doc. 36 ¶ 1).  On September 9, 2005, Defendants executed a "General Application and Agreement of Indemnity with Merchants" (the "Contract").  (PSOF ¶ 2; CSOF ¶ 1).  Woody executed the Contract in both his official capacity as President of U.S. Prefab, Inc., and his personal capacity as a guarantor.  (The Contract, Doc. 34, Ex. A).  The Contract obligated Defendants to reimburse and indemnify Plaintiff for liabilities and losses that Plaintiff incurs arising out of claims made against any bonds issued by Plaintiff on behalf of U.S. Prefab, Inc.  (PSOF ¶ 3; CSOF ¶ 1).  In 2008, Plaintiff issued the relevant construction bond (the "Bond") on behalf of U.S. Prefab.  (Doc. 34, Ex. E).

At some point, two of U.S. Prefab, Inc.'s subcontractors asserted claims against the Bond.  (PSOF ¶ 8; CSOF ¶ 2).  Plaintiff notified Defendants of the Bond claims, but Defendants neither paid the claims directly nor deposited sufficient funds or assets with Plaintiff to cover the claims as provided for in the Contract.  (PSOF ¶¶ 9–10; CSOF ¶ 3).  Plaintiff settled the Bond claims by making payments totaling $149,525.02.  (PSOF ¶ 11; DOSF ¶ 4).  On January 13, 2011, Plaintiff recovered an offsetting amount of $54,850.18 from a third party.  (PSOF ¶ 16).

On April 6, 2011, Plaintiff paid a fee of $150 to First American Title (PSOF ¶ 15), presumably to verify the title to Woody's residence.  Subsequently, Plaintiff executed a Deed of Trust and Assignment of Rents dated April 29, 2011 (the "Deed of Trust") against Woody's personal residence in the amount of $94,674.84.  (Doc. 34-1 at 28–34).

On October 31, 2011, Plaintiff's counsel sent Defendants a demand to repay Plaintiff $95,000.49 in relation to the Contract.  (PSOF ¶ 14; DOSF ¶ 14; Doc. 34, Ex. E).  Defendants refused and, on March 9, 2012, Plaintiff filed the instant suit alleging breach of contract and fraud.  (Doc. 1).  During the pendency of Plaintiff's suit, Defendants moved to amend their Answer to Plaintiff's Complaint to add a counterclaim alleging that Plaintiff falsely executed the Deed of Trust against Woody's homestead in

violation of Arizona Revised Statute § 33-420(c).  (Doc. 22).  Subsequently, Plaintiff voluntarily filed a Deed of Release and Full Reconveyance (the "Release") on February 8, 2013 releasing the Deed of Trust and mooting Defendants' proposed counterclaim. (Docs. 25, 30–31).

Plaintiff filed the instant motion for partial summary judgment (Doc. 32) on Count I (Breach of Contract) of the Complaint (Doc. 1 at 4–5), on which the Court now rules.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1).  Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the non-movant to establish the existence of material fact. *Id.*  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare

assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (internal citations omitted).

## III.   ANALYSIS

Plaintiff moves (Doc. 32) for partial summary judgment on Count I (Breach of Contract) of the Complaint (Doc. 1 at 4–5). Plaintiff presents evidence (PSOF; Doc. 34) and argues (Doc. 32 at 5–9) that there is no genuine dispute of material fact that Defendants breached the Contract between the Parties and are obligated to indemnify and reimburse Plaintiff in full for Plaintiff's losses. Specifically, Plaintiff argue that that it is beyond dispute that as of June 14, 2013, Plaintiff has suffered losses totaling $105,211.40 (excluding interest). (Doc. 32 at 8–9; PSOF ¶¶ 16–17). Plaintiff's alleged $105,211.40 loss has three components: (1) $94,674.84 for reimbursement of payments made to settle Bond claims against Defendants, (2) $10,386.56 for attorneys' fees and costs through June 14, 2013, and (3) $150 for a payment to First American Title in conjunction with Plaintiff's filing of the Deed of Trust. (PSOF ¶¶ 11, 15–16).

In Response, Defendants accept (*see* Doc. 35; CSOF ¶¶ 1–5) most of Plaintiff's proffered facts and conclusions, including that Defendant breached the Contract by failing to reimburse $94,674.84 to Plaintiffs. Defendants, however, oppose Plaintiff's claims related to the execution and release of the Deed of Trust, including the $150 title fee and an unidentified portion of the $10,386.56 for attorneys' fees and costs.[2] (Doc. 35

---

[2] The $10,386.56 figure aggregates all of Plaintiff's attorneys' fees and costs as of June 14, 2013. Although Defendants accept (Doc. 35 at 2–4) that, under the contract,

at 1–2).  Specifically, Defendants argue that there is a genuine dispute of material fact whether Plaintiff had the legal authority under the contract to file the Deed of Trust against Woody's homestead, and, if so, whether Plaintiff properly exercised its discretion in doing so.  (Doc. 35 at 2–5).  Consequently, Defendants dispute the $150 title fee and the total of $10,386.56 in attorneys' fees and costs.  (*Id.*).

In Reply, Plaintiff argues that Defendants interpret the plain language of the Contract too narrowly and, in actuality, the Contract grants Plaintiff broad discretion in the steps Plaintiff takes to enforce the Contract, including executing the Deed of Trust.  (Doc. 38 at 5–8).  Plaintiff supports (*id.*) its argument with citation to and interpretation of four paragraphs of the Contract:

- Paragraph SECOND obligates Defendants to reimburse Plaintiff for "loss and expense of whatsoever kind or nature," including expenses related to Defendants' failure to comply with the Contract and Plaintiff's subsequent enforcement actions.  (The Contract, Doc. 34, Ex. A ¶ 2).

- Paragraph FOURTEENTH obligates Defendant to collateralize Plaintiff against liability related to the Bond.  (*Id.* ¶ 14).

- Paragraph FIFTH grants Plaintiff the right "to take such other steps as in the discretion of [Plaintiff] may be *advisable* or *necessary* to secure its release or to secure itself from loss" related to contracts guaranteed by the Bond.  (*Id.* ¶ 5 (emphasis added)).

- Paragraph SEVENTH appoints Plaintiff as Defendants' attorney-in-fact with the right to issue any "document *necessary* or *desired* to carry into effect the purposes of" the Contract.  (*Id.* ¶ 7 (emphasis added)).

Plaintiff further argues that under the plain language of the Contract provisions listed above, Plaintiff's execution of the Deed of Trust was a reimbursable "exercise" of

---

Plaintiff is entitled to some (and perhaps most) of those attorneys' fees and costs, because Plaintiff has not provided detailed billing records, Defendants (and the Court) cannot disambiguate what portion of the claimed fees and costs relates to Plaintiffs' execution and subsequent release of the Deed of Trust.  Consequently, Defendants must oppose the aggregate amount.

Plaintiff's right "to secure itself against the losses Defendants chose to ignore." (Doc. 38 at 7–8).

Plaintiff neglects to consider, however, that even if the Court accepts Plaintiff's interpretation of the plain language of the Contract,[3] the Contract does not give Plaintiff the unbounded right to pursue any course of action or to issue any document for the purpose of securing itself against losses related to the Bond. Paragraph FIFTH explicitly limits Plaintiff's actions to those that are "advisable or necessary" to secure itself from loss. (The Contract, Doc. 34, Ex. A ¶ 5). Similarly, Paragraph SEVENTH explicitly limits Plaintiff's ability to issue "any document" as Defendants attorney-in-fact to those documents that are "necessary or desired" to effectuate the purposes of the Contract (which, here, would be securing Plaintiff's against loss). (*Id.* ¶ 7). Additionally, although the Contract grants Plaintiff discretion to determine what is "necessary," "advisable," or "desirable," Arizona contract law requires Plaintiff to exercise its discretion within the bounds of "good faith and fair dealing." *See*, *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 ¶ 59 (Ariz. 2002) (en banc) ("Arizona law implies a covenant of good faith and fair dealing in every contract.").

Here, however, Plaintiff points to no direct evidence demonstrating that Plaintiff's execution of the Deed of Trust was "advisable or necessary" and "necessary or desired." (*See* Docs. 32, 38). Instead, Plaintiff appears to expect the Court to infer that executing the Deed of Trust was necessary, advisable, or desirable because Defendants had thus far ignored or refused Plaintiff's requests for reimbursement. (*See id.*). In contrast, Defendant requests that the Court infer that Plaintiff's execution of the Deed of Trust was not necessary, advisable, or desirable because, upon challenge by Defendants, Plaintiff

---

[3] The Court notes that, at this time, the Court takes no position regarding whether or not Plaintiff has, as a matter of law, correctly interpreted the plain language of the Contract. Further, the Court cautions the Parties that nothing in this Order shall be construed as a finding or determination that the Parties intended the Contract to entitle, or that the Contract actually entitles, Plaintiff to (1) execute a Deed of Trust against Woody's homestead, or (2) receive reimbursement for expenses incurred in so doing.

voluntarily released the Deed of Trust. (Doc. 35 at 3–4 (describing the Deed of Trust as improvident and imprudent, and arguing that Plaintiff incurred these expenses "voluntarily and unnecessarily to secure itself with collateral that the Plaintiff appropriated but abandoned when its actions were challenged")).

Indeed, Plaintiff's own description of its voluntary release of the Deed of Trust is instructive:

> out of an abundance of caution, [Plaintiff] filed a Deed of Release and Full Reconveyance (the "Release") on February 8, 2013 releasing the Deed of Trust . . . against real property owned by [Woody] in the amount of $94,674.84. As a result of recording the Release, Woody's Motion to Amend Answer to State a Counterclaim is now moot. More specifically, Woody's allegations arising out of A.R.S. § 33-420(c), which provides that liability attaches if the defendant refuses to release or correct the document or record within 20 days from the written request from the owner, are now moot since [Plaintiff] filed the Release prior to the effective date of any written demand on the part of Woody.

(Doc. 25 at 1–2 (internal citation omitted)).[4]   Plaintiff's voluntary Release does not establish an undisputed fact regarding whether or not Plaintiff's execution of the Deed of Trust was "advisable or necessary" and "necessary or desired" within the meaning of the Contract. However, if construed in the light most favorable to Defendants, Plaintiff's Release does create a legitimate and justifiable inference that the Deed of Trust was not "advisable or necessary" and "necessary or desired."

In the summary judgment context, the Court is required to construe all disputed facts in the light most favorable to the non-movant, *Ellison*, 357 F.3d at 1075, and draw

---

[4] Arizona Revised Statute § 33-420(c) provides that

> A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he wilfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property.

all legitimate and justifiable inferences in favor of the non-movant.  *Liberty Lobby*, 477 U.S. at 255.   Consequently, the Court finds that the evidence in the record demonstrates a genuine dispute of material fact whether Plaintiff's execution of the Deed of Trust was "advisable or necessary" and "necessary or desired."   Thus, there is a genuine dispute of material fact whether or not Plaintiff is entitled to reimbursement for attorneys' fees and costs related to the execution and release of the Deed of Trust.  Accordingly, Plaintiff is not entitled to partial summary judgment with regard to the $150 title fee and the portion of the $10,386.56 in attorneys' fees and costs related to the execution and release of the Deed of Trust.  Furthermore, because Plaintiff provides no mechanism for the Court to identify which portion of the $10,386.56 in attorneys' fees and costs relates to the Deed of Trust, the Court must deny partial summary judgment for the entire aggregate amount.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff Merchant Bonding Company (Mutual)'s Motion for Partial Summary Judgment (Doc. 32) on Count I of the Complaint is GRANTED in part and DENIED in Part, consistent with the reasoning set out above.

**IT IS FURTHER ORDERED** that partial summary judgment on Count I is granted to Plaintiff and against Defendants in the amount of $94,674.84 (the aggregate amount of unreimbursed claims against the Bond paid by Plaintiff), plus interest.  The remaining damages sought in Count I and all of Count II shall proceed to trial.  Within 5 days of the conclusion of trial Plaintiff shall submit a proposed form of judgment which includes the damages awarded in this Order, including a calculation of pre- and post-judgment interest, plus any damages awarded at trial, again including any necessary interest calculation.  *See* LRCiv 58.1(b).  Defendant may object to the proposed form of judgment as provided in LRCiv 58.1(a) (incorporating the time limits of LRCiv 52.1). Any motion for attorneys' fees, costs, or expenses must be filed within the time set forth in Fed. R. Civ. P. 54(d)(2), and in the form set forth in LRCiv 54.2.

Dated this 25th day of March, 2014.

James A. Teilborg
Senior United States District Judge